Filed 12/22/20  Deleon v. EH & BG Investments CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ARACELI DELEON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>EH & BG INVESTMENTS, INC.,<br><br>        Defendant and Respondent. | A157052<br><br>(Contra Costa County Super. Ct. No. CIVMSC17-00134) |

Araceli Deleon obtained a default judgment in a slip and fall case against EH & BG Investments, Inc. (defendant) for $556,090.  The trial court set aside the default judgment but left the underlying default intact.  Later, the court set aside the "entire default so that the case [could] be heard on the merits."

Deleon appeals.  We affirm.  We conclude the default judgment was subject to be set aside on the equitable ground of extrinsic mistake.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant owns and operates a restaurant and dance club in Concord. In January 2017, Deleon filed a lawsuit against defendant alleging negligence and premises liability and seeking compensatory damages. According to the complaint, Deleon slipped on water on the dance floor and

1

was injured. She filed a proof of service indicating the summons and complaint, and a statement of damages, were personally served on defendant's designated agent for service of process on January 30, 2017.

In June 2017, Deleon requested entry of default. The court entered the default and scheduled a prove-up hearing. Before that hearing, Deleon filed a statement of damages seeking $1 million in general damages and $55,000 in special damages.[1] The statement of damages was not accompanied by a proof of service but was dated January 28, 2017. Deleon testified at an unreported February 20, 2018 prove-up hearing, where the court ordered her to provide a supplemental declaration regarding special damages and future medical costs, and to appear at a "continued prove-up" hearing in March.

On February 22, 2018, Deleon filed a declaration averring she fractured her ankle when she slipped on the dance floor. She had surgery to repair her ankle and missed three months of work. In this declaration, Deleon indicated that she sought only $500,000 in general damages, $55,000 in special damages, and $545 in costs. Deleon's declaration attached medical bills, employment-related documents, and photographs of her ankle in various stages of rehabilitation.

That same day—and before the continued prove-up hearing—the court entered a default judgment against defendant in the amount of $556,090. The court signed the judgment on February 20, 2018, two days before Deleon filed her declaration. The proof of service attached to the judgment is dated February 16, 2018, *before* the judgment was signed and filed.

---

[1] There are five statements of damages. Each seeks an identical amount of damages but is directed at a different fictitious business name for defendant. We refer to the statements using the singular.

In March 2018, Deleon filed various unauthenticated documents "in support of application for entry of default judgment."

A.

*The Court Sets Aside the Default Judgment*

In December 2018, defendant moved to set aside the default and default judgment pursuant to Code of Civil Procedure sections 473 and 473.5,[2] and on equitable grounds. Defendant argued it did not receive actual notice of the default or the default judgment, and that the statement of damages was not personally served before entry of default. It also contended the award of special damages lacked evidentiary support. Finally, defendant urged the court to set aside the default and default judgment on the equitable grounds of mistake or fraud.

In a supporting declaration, Mario Rosales, defendant's sole officer and director, averred he did not know about the lawsuit—or receive "any documentation regarding it"—until May 2018, when he was served with documents pertaining to a debtor examination. Rosales had met with Deleon's attorney in March. During that meeting, Rosales claimed, the attorney did not tell him a lawsuit had been filed against defendant, nor that a default judgment had been entered.

Rosales did not recall seeing or receiving the statement of damages before May 2018, and he "d[id] not believe" defendant was served with that document. Had Rosales known about the lawsuit, defendant would have "respond[ed] to the allegations" and "defend[ed] against" the lawsuit by denying liability. Rosales did not believe defendant was liable for Deleon's

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

3

damages because she was wearing high heels, which "were difficult to walk in" and caused her "to trip and fall."

Defendant's agent for service of process, Luis Garcia, averred he "d[id] not believe" he was served with the statement of damages. Garcia did not recall seeing the statement of damages before his attorney showed it to him "recently." Defense counsel offered a declaration attaching, among other documents, a chart calculating the amount of Deleon's medical bills.

Deleon opposed the motion. She surmised the court "was satisfied with the . . . evidence presented" at the prove-up hearing. She also argued the summons, complaint, and statement of damages were properly served, and offered supporting declarations attesting to service of those documents on defendant's agent for service of process. Finally, Deleon contended defendant was not entitled to equitable relief from the default judgment based on "extrinsic fraud."

Defendant's reply highlighted the "irregularities" that warranted vacating the default and default judgment on equitable grounds. Defendant also offered a proposed answer denying all material allegations in the complaint, and raising several affirmative defenses.

In February 2019, the court partially granted the motion and set aside the default judgment. It determined the judgment was void because it was for an amount "far in excess of the evidence produced" at the prove-up hearing. The court, however, declined to set aside the underlying default. It explained: "vacating a default judgment because it is excessive does not affect the underlying default. It simply returns the case to the default status it had before the erroneous judgment was entered."

The court set a new prove-up hearing date.

4

B.

*The Court Sets Aside the Underlying Default*

Before the renewed prove-up hearing, defendant moved for reconsideration (§ 1008). It urged the court to set aside the underlying default because Deleon did not serve the statement of damages before entry of default. Defendant relied on a supplemental declaration from Garcia, defendant's agent for service of process, who averred he was not served with the statement of damages before defendant's default was entered, and that he did not receive the statement of damages until December 2018. According to defendant, Garcia's declaration was "new" evidence negating the presumption that Deleon timely served the statement of damages.

In opposition, Deleon argued the motion did not satisfy the requirements of section 1008. Deleon's attorney, Mark Pappas, averred the statement of damages was included "in the original package of documents" served on Garcia in January 2017. Deleon's process server offered a declaration stating he personally served Garcia with the statement of damages.

Defendant's reply reiterated that the statement of damages was not served before entry of default. Defendant also urged the court to exercise its inherent authority to reconsider its prior order and set aside the default.

In April 2019, the court set aside the default judgment not based on section 1008 but on its "inherent power to change its decision." The court noted a judgment is void for lack of personal service of a plaintiff's statement of damages and that a "void judgment must be set aside regardless of the merits of the underlying action." Next, the court determined it was unable to resolve whether the statement of damages had been served before entry of default. As the court explained, it found "itself unable to determine from the

5

competing declarations of the agent for service of process, the process server and Mr. Pappas whether the default judgment [was] void as a matter of law for failure to properly serve the Statement of Damages. . . . Given the circumstances," the court set aside "the entire default so that the case can be heard on the merits."

Deleon timely appealed both orders.

DISCUSSION

As set forth above, the court set aside the default judgment because it was for an amount "in excess of the evidence produced" at the prove-up hearing. Later, the court set aside the underlying default based on conflicting evidence regarding whether Deleon served the statement of damages before entry of default. For reasons different than the trial court's, we affirm. We conclude defendant established entitlement to relief from the default judgment on the equitable ground of extrinsic mistake.

A trial court has inherent power to vacate a default judgment on equitable grounds, and its decision to grant such relief is reviewed for abuse of discretion. (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1245, 1246 (*Mechling*).) An appellate court may grant equitable relief from a default judgment even if a trial court has declined to do so. (*Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 910–911 [granting equitable relief in the first instance]; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980–984 [granting equitable relief where trial court denied motion for relief pursuant to section 473].) Because we review the trial court's result, not its reasoning, we "may affirm the . . . ruling on any ground supported by the record." (*Taylor v. Elliott Turbomachinery Co. Inc.* (2009) 171 Cal.App.4th 564, 573, fn. 5; *Rappleyea,* at p. 981.)

6

" 'One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.' [Citations.] '[E]xtrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present.' " (*Mechling, supra,* 29 Cal.App.5th at p. 1246.) Courts have found extrinsic mistake where the moving party has shown excusable neglect, hardship, or other grounds for the failure to press a claim or defense. (*Estate of Beard* (1999) 71 Cal.App.4th 753.)

"To qualify for equitable relief based on extrinsic mistake, the defendant must demonstrate: (1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.' [Citations.] When 'a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances.' " (*Mechling, supra,* 29 Cal.App.5th at p. 1246, fn. omitted.) At the same time, however, the "law 'favor[s] a hearing on the merits whenever possible, and . . . appellate courts are much more disposed to affirm an order which compels a trial on the merits than to allow a default judgment to stand.' " (*Ibid.*)

Here, defendant qualified for equitable relief from the default judgment based on extrinsic mistake. First, defendant demonstrated it had " 'a meritorious case' " by offering a proposed answer denying the allegations of the complaint and raising affirmative defenses. (*Mechling, supra,* 29 Cal.App.5th at pp. 1247, 1248.) Defendant also submitted a

declaration disputing causation: Rosales opined he did not believe defendant was liable for Deleon's damages because she was wearing high heels, which "were difficult to walk in" and caused her "to trip and fall." (*Smith v. Busniewski* (1952) 115 Cal.App.2d 124, 129 [moving party's declaration averring he " ' ha[d] a good defense' " to the action established meritorious defense element].) "The moving party does not have to guarantee success, or 'demonstrate with certainty that a different result would obtain . . . . Rather, [it] must show facts indicating a sufficiently meritorious claim to entitle [it] to a fair adversary hearing.' " (*Mechling,* at p. 1246.) Defendant made that showing here.

Second, defendant articulated a satisfactory excuse for not presenting a defense to the lawsuit. (*Mechling, supra,* 25 Cal.App.5th at p. 1248.) Rosales averred he was not aware of the lawsuit until May 2018, *after* entry of the default and default judgment. He stated he did not receive "any documentation regarding" the lawsuit, including the statement of damages, before May 2018.[3] We acknowledge that Garcia, defendant's agent for service of process, did not deny receiving the summons and complaint. But a reasonable inference from Rosales's declaration is that Garcia did not

---

[3] Significantly, Rosales also stated Deleon's attorney did not tell him a lawsuit had been filed, or that a default judgment had been entered, when they met in March 2018. Deleon's attorney claimed he showed Rosales a copy of the default judgment at their March 2018 meeting and emailed Rosales's wife a copy of the default judgment within a few days of the meeting. The trial court was not required to accept this testimony as true. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632.) Even if we credit the attorney's statements, they do little, if anything, to establish Rosales's awareness of the lawsuit *before* the default and default judgment were entered.

8

notify defendant of the lawsuit and thus, defendant—through no fault of its own—did not have actual notice of the lawsuit in time to defend against it. Rosales testified that had he known about the lawsuit, defendant would have "respond[ed] to the allegations" by denying liability.  From this evidence, it is reasonable to conclude defendant offered a satisfactory reason for failing to present a defense before the entry of default and default judgment. (*Mechling,* at p. 1246.)

Finally, defendant established diligence in seeking to set aside the default judgment once it had been discovered.  (*Mechling, supra,* 29 Cal.App.5th at p. 1248.)  When determining whether a party is entitled to equitable relief from a default judgment, "the 'court must weigh the reasonableness of the conduct of the moving party in light of the extent of the prejudice to the responding party.' " (*Id.* at pp. 1248–1249.)  Given the relatively short length of time between entry of the default judgment and the motion to set aside that judgment, and the lack of prejudice to Deleon, we conclude the diligence factor is satisfied.  (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 857 [plaintiff's failure to show prejudice from defendant's claimed lack of diligence was important factor when determining entitlement to equitable relief].)

Deleon's reliance on *Rodriguez v. Cho* (2015) 236 Cal.App.4th 742 and *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, does not alter our conclusion.  Those cases are factually distinguishable.  In *Rodriguez,* there was no extrinsic fraud because the moving party did not establish fraudulent or improper service of the summons and complaint, and because the moving party failed to establish a meritorious defense.  (*Rodriguez,* at p. 751.)  In *Kulchar*, there was no extrinsic fraud in part because the husband presented his case at trial.  (*Kulchar,* at pp. 473–474.)

9

## DISPOSITION

The orders setting aside the default and default judgment are affirmed. Defendant is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____

Reardon, J.*

WE CONCUR:


_____

Simons, Acting P. J.


_____

Needham, J.


A157052


_____

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


11