Filed 4/19/22  Chichyan v. Roger CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| HAIKUHE CHICHYAN, | B311958 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV01244) |
| v. | |
| DIMITRI ROGER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Sotelo, Judge.  Reversed with directions.

Revolve Law Group and Kimberly A. Wright for Defendant and Appellant.

Law Offices of Robert E. Weiss and Cris A. Klingerman for Plaintiff and Respondent.

—————————————

Dimitri Roger appeals from an order denying his motion to set aside the default judgment entered in favor of Haikuhe Chichyan. Chichyan sued Roger for breach of contract and related claims arising from Roger's lease of real property in Los Angeles (the property). After Roger failed to file an answer, the clerk entered a default, and the trial court entered a default judgment. Roger moved to set aside the default judgment under the court's equitable powers, asserting he was not personally served and did not learn of Chichyan's lawsuit until about four months after entry of the default judgment, after which he acted expeditiously to set it aside. The trial court rejected Roger's argument he was not on notice of the lawsuit, and it denied Roger's motion for relief from the default judgment, finding based on the process server's declaration and video evidence that Roger deliberately avoided service of the summons and complaint.

On appeal, Roger contends the trial court abused its discretion in denying his motion for equitable relief. Roger also argues for the first time on appeal the default judgment against him is void because the damages award exceeds the prayer in the first amended complaint. We agree as to the latter contention. We reverse and remand for the trial court to vacate the default judgment and modify it to award damages no greater than the amount demanded by Chichyan in the first amended complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Complaint and Entry of the Default and Default Judgment*

On January 15, 2019 Chichyan, as trustee for the Arman Yurdumyan Trust (the Trust), filed a complaint against Roger

2

alleging a cause of action for breach of contract. Chichyan requested $32,376 in damages. On January 30 Chichyan filed a first amended complaint, alleging causes of action for breach of contract, damage to real property, and damage to personal property. The first amended complaint alleged Roger and the Trust entered into a written agreement on July 11, 2018, under which the Trust leased the property to Roger for six months at a rate of $22,500 per month. The agreement required Roger to pay a 10 percent late fee if his rent payment was made more than three days after the 18th of the month. The agreement further required Roger to pay for the water, power, gas, cable television, internet, phone, and waste disposal utilities for the property. The agreement obligated Roger at the end of the lease to clean the property and to deliver it to the Trust in the same condition as when Roger first leased it.

The first amended complaint alleged Roger vacated the property on January 17, 2019 but failed to make his final rent payment that was due on December 17, 2018. Further, Roger failed to pay multiple utility bills. Roger returned the property to the Trust with extensive damage to the premises, furnishings, and fixtures. Chichyan alleged, "The full assessment of the total repair and replacement costs required in order to return the premises to the same condition in which [Roger] . . . received the premises upon the commencement [of] the lease is ongoing and is subject to proof."

The first amended complaint sought $22,500 in unpaid rent; $2,250 for an unpaid late fee; $7,376.29 in unpaid utilities; and $2,500 in liquidated damages for breach of a non-smoking provision, for a total of $34,626.29, plus further economic damages "subject to proof."

3

On March 27, 2019 Chichyan filed a proof of service of summons, signed by registered California process server Brian Weller, who attested he personally served Roger with the summons, complaint, and amended complaint at 3:30 p.m. on March 20, 2019 at a specified address in Calabasas.

On May 29, 2019 Chichyan filed a request for entry of default and clerk's judgment. The clerk entered the default the same day. On January 21, 2020 Chichyan filed a request for entry of default judgment seeking $304,309.84 in damages plus interest and costs. In support of his request, Chichyan submitted a declaration by attorney Maro Burunsuzyan asserting Roger caused extensive damage to the property ("'trash[ing]'" the property), requiring $304,309.84 in repairs and replacement costs. On June 5, 2020 the trial court entered a default judgment against Roger in the amount of $346,698.45, comprised of $304,309.84 in damages plus prejudgment interest and costs.

B. *Roger's Motion To Set Aside the Default Judgment*

On December 1, 2020 Roger filed a motion to set aside the default judgment pursuant to the court's inherent equitable powers for lack of actual notice.[1] Roger requested leave to file an answer to the first amended complaint and "to defend the action."[2] Roger asserted he was in New York on March 20, 2019

---

[1] Roger also sought relief under Code of Civil Procedure sections 473.5 and 473, subdivision (b), but he has abandoned these bases for relief on appeal. Further undesignated statutory references are to the Code of Civil Procedure.

[2] Although Roger's motion did not expressly seek to set aside the default, we treat Roger's request for leave to defend the action as a request for relief from the default.

4

when he was purportedly served in Calabasas according to the proof of service of the summons and complaint. In his declaration filed in support of the motion, Jean Roger, Roger's father, averred he lived with Roger at the Calabasas address in March 2019. At 3:30 p.m. on March 20 Jean was home, but Roger had traveled to New York. Jean averred the process server left "various documents relating to this case" with Jean without explaining their legal significance. Jean did not understand what the documents were and discarded them, believing them to be "'junk'" mail sent to Roger, who is an artist in the music industry.

Roger stated in his declaration in support of the motion that he was not personally served with the summons or complaint. Rather, he was in New York from March 20 through 27, 2019 to shoot a music video for one of his songs. Roger believed his father was served with the documents but never gave them to Roger. Roger "discovered the default judgment in approximately October 2020, after [his] attorney did a docket search for another matter." He then "acted immediately and retained counsel the same day to move to set aside the default judgment." Roger attached to his declaration a copy of an invoice for a New York hotel showing a reservation in Roger's name from March 20 through 27, 2019, and copies of images that Roger averred had been taken of him and posted online to his social media account while he was in New York during this period.

Chichyan opposed Roger's motion, arguing Roger had been personally served, and to the extent Roger lacked actual notice of the lawsuit, it was due to his avoidance of service and inexcusable neglect. Chichyan asserted Roger's hotel invoice only showed that Roger had booked a room in New York, not that he was there on March 20, 2019, and Chichyan pointed to the

absence of evidence of an airline itinerary, business records, or ground transportation relating to Roger's claimed trip to New York.

In his declaration, Weller described his efforts to serve Roger. Weller was aware of Roger's physical appearance from Roger's "strong online presence, with many pictures and videos existing on social media and other websites." After determining Roger resided at an address in Calabasas, Weller made several attempts at service. On February 21, 2019 an older man answered the door and nervously told Weller that Roger did not live there. However, Weller saw several luxury vehicles parked outside the residence, which Weller recognized from Roger's social media posts. On March 3, 2019 a young woman at the Calabasas residence told Weller that Roger would be gone for three weeks.

At 3:00 p.m. on March 20, 2019 Weller returned to the Calabasas residence. He again saw luxury vehicles he believed to be Roger's parked outside. The woman who answered the front door told Weller that Roger was not there, but through the door Weller noticed several people inside, one of whom he believed was Roger. Weller told the woman he was a process server with court documents for Roger. Weller returned to his car to wait before making a further attempt.

A half hour later, as Weller again approached the residence, Roger exited from the front door. Weller announced he was a process server with court documents for Roger, and "[a]t that point [Weller] then turned on [his] cell phone video record[er]." Roger did not stop to allow Weller to hand him the envelopes containing the documents and instead "continued to walk down the driveway towards his vehicle in an apparent

6

attempt to avoid service." Weller stated, "'Here you go Dimitri. Thank you.'" Then Weller dropped the two service envelopes (one for this case and another for a related case against Roger) at Roger's feet. Roger continued to walk away. Weller returned to his car. As he drove away from the property, he heard Roger say, "'If I ever see you around here again, I'm gonna whoop your ass.'" Weller hurried away. Weller attached to his declaration still images from the video he recorded, which show a manila envelope and a young Black man walking to the street.

After a hearing on February 3, 2021, the trial court issued a minute order describing the motion and parties' evidence and stating its tentative ruling to grant the motion. However, the court continued the hearing to February 17 and requested Chichyan provide a copy of the cell phone video described in Weller's declaration to opposing counsel and the court. The court explained in its minute order, "The photos provided by Weller are of low quality making them somewhat challenging to see. Although not definitive, the photographs do appear to show someone who resembles [Roger]. The Court disagrees with [Roger]'s argument that even if the recording is accurate, he still did not have actual notice of the action. If the interaction described by Weller is accurate, then Defendant did not have notice because he deliberately avoided the process server giving him the documents."

The same day Chichyan lodged a copy of the video to the court, which he served on Roger's attorneys by email. In the video, the man holding the camera phone can be heard off-screen saying, "Hey Dimitri." A second man responds, but the answer cannot be discerned from the recording. The first man then states, "Here you go, Dimitri," and a hand can be seen dropping

7

two manila envelopes on a paved driveway.  The camera pans up to show a young Black man on foot exiting a driveway toward the street.  The young man appears to see the envelopes being dropped but continues to walk away.  The first man then says, "Thank you," and he walks away.

On February 5, 2021 the trial court denied Roger's motion, explaining it had "carefully review[ed] the moving papers, opposition, reply and the video."  The court vacated the continued hearing.

Roger timely appealed.

## DISCUSSION

A.      *The Trial Court Did Not Abuse Its Discretion in Denying Roger's Motion To Set Aside the Default Judgment on Equitable Grounds*

1.      *Applicable law and standard of review*

"[A] trial court may . . . vacate a default on equitable grounds even if statutory relief is unavailable." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981, 985 [granting equitable relief from default judgment due to defendants' failure to pay full filing fee for answer because of incorrect information from clerk's office]; accord, *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 910 (*Luxury Asset*).)  "One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.  [Citations.]  'Extrinsic mistake is found when [among other things] . . . a mistake led a court to do what it never intended . . . .'" (*Rappleyea*, at p. 981; *Mechling v. Asbestos*

8

*Defendants* (2018) 29 Cal.App.5th 1241, 1246.) "To qualify for equitable relief based on extrinsic mistake, the defendant must demonstrate: (1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.'" (*Mechling*, at p. 1246; accord, *Rappleyea*, at p. 982.)

"We review a challenge to a trial court's order denying a motion to vacate a default on equitable grounds . . . for an abuse of discretion." (*Rappleyea v. Campbell, supra*, 8 Cal.4th at p. 981; accord, *Mechling v. Asbestos Defendants, supra*, 29 Cal.App.5th at p. 1246.) "We defer to the trial court's determination of credibility and do not reweigh evidence or reassess the credibility of witnesses." (*Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, 15 (*Behm*); accord, *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622.) "If the evidence gives rise to reasonable conflicting inferences, one of which supports the trial court's determination, we will affirm the court's finding on appeal." (*Behm*, at p. 15; accord, *Johnson*, at p. 623.) "When a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances." (*Rappleyea*, at p. 981; accord, *Luxury Asset, supra*, 56 Cal.App.5th at p. 910.)

> 2.     *Roger failed to present a satisfactory excuse for not presenting a defense to Chichyan's action*

Roger contends the trial court abused its discretion in denying his request for equitable relief based on extrinsic mistake because, as Roger stated in his declaration, he was not aware of the lawsuit until October 2020. The trial court did not

9

abuse its discretion. In denying Roger's motion, the court impliedly found Weller (through his declaration) was credible, and Roger and his father (through their declarations) were not. This is clear from the court's minute order continuing the hearing on Roger's motion and requesting Weller's cell phone video, in which the court acknowledged the photographs attached to Weller's declaration were of "low quality" and "somewhat challenging to see." The court explained its need for the video, "If the interaction described by Weller is accurate, then [Roger] did not have notice because he deliberately avoided the process server giving him the documents." Only after reviewing the video did the court deny Roger's motion. It is therefore evident the trial court found the video to be convincing evidence of Weller's version of events. As the reviewing court we do not reweigh the evidence and must instead defer to the trier of fact's express or implied findings where those findings are supported by substantial evidence. (*Behm, supra*, 241 Cal.App.4th at p. 15; *Johnson v. Pratt & Whitney Canada, Inc., supra*, 28 Cal.App.4th at p. 622.)

Substantial evidence supports the trial court's findings. Roger does not contend he is not the person seen in the video.[3] Rather, he notes the video does not depict Weller notifying Roger he is a process server with court papers, arguing "Roger's public figure status, coupled with a stranger approaching with unidentified papers, may lead Roger to not be fully aware of the legal importance of the encounter, or that he was being served,

---

[3]     The record before the trial court included multiple still images of Roger, which Roger submitted in support of his motion to set aside the default judgment to show he was in New York at the time Weller claimed to have served Roger.

providing a satisfactory excuse for his failure to respond." Roger's contention is disingenuous because he initially averred in his declaration he could not have been personally served on March 20, 2019 because he was in New York, but once faced with a video showing him avoiding service, he changed his story. The trial court resolved the conflict in the evidence against Roger, impliedly crediting Weller's declaration that he announced he was a process server with court documents for Roger before he began to record the service with his cell phone camera.

Given the trial court's finding Roger lacked notice only because he intentionally avoided service, the court did not abuse its discretion in denying equitable relief. "[E]xtrinsic fraud and extrinsic mistake are unavailable when a party's own negligence allows the fraud or mistake to occur." (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 29, 31 [reversing grant of motion to set aside default judgment where "any lack of actual notice was due to [defendants'] own negligence" in failing to apprise plaintiff and the court of correct address for service]; accord, *In re Marriage of Park* (1980) 27 Cal.3d 337, 345 ["a motion to vacate a judgment should not be granted where it is shown that the party requesting equitable relief has been guilty of inexcusable neglect"]; see *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503 ["Relief on the ground of extrinsic fraud or mistake is not available to a party if that party has been given notice of an action yet fails to appear, without having been prevented from participating in the action."].)

Roger urges us in the alternative to grant equitable relief from the default judgment on appeal despite the trial court's denial of relief, relying on *Luxury Asset, supra*, 56 Cal.App.5th 894. But *Luxury Asset* does not stand for the proposition, as

11

argued by Roger, that a reviewing court "may . . . assess witness credibility and resolve conflicts in evidence." We cannot. Contrary to Roger's contention, the *Luxury Asset* court reversed the trial court's denial of the defendant's motion for equitable relief from a default and default judgment on the basis the trial court had abused its discretion in determining the defendant failed to show diligence in seeking relief notwithstanding the *undisputed* evidence showing diligence. (*Id.* at pp. 911, 913-914.) And there was no dispute (in the trial court or on appeal) that the corporate defendant had presented a satisfactory excuse for not presenting a defense to the complaint, where the plaintiffs served a shareholder they knew was not trustworthy on behalf of the corporate defendant, and the shareholder failed to inform his fellow shareholders that the company needed to respond. (*Id.* at pp. 912-913.) Here, it was the proper role of the trial court to resolve the conflicting evidence before it.

B.     *The Default Judgment Is Void on Its Face*
       1.     *Roger's challenge to the default judgment as void may be raised for the first time on appeal*

For the first time on appeal, Roger argues the default judgment is void on its face because it awards damages in excess of the damages alleged in the first amended complaint. Chichyan asserts this court lacks jurisdiction to review the merits of Roger's claim because Roger did not appeal the default judgment, and any challenge to the default judgment is therefore untimely. Roger has the better argument.

If a court "lack[s] fundamental authority over the subject matter, question presented, or party, . . . its judgment [is] void." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56; accord,

12

*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1442 [default and default judgment void for lack of proper service on corporate agent]; *Carr v. Kamins* (2007) 151 Cal.App.4th 929, 933 [default judgment void for ineffective service by publication]; see § 473, subd. (d) [a trial court "may . . . set aside any void judgment or order"].)

"[A] default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826; accord, *Behm, supra,* 241 Cal.App.4th at p. 13; see § 580, subd. (a) ["The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . . ."].) "'[Q]uestions of jurisdiction are never waived and may be raised for the first time on appeal.'" (*Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1050; accord, *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830-831 & fn. 18 [trial court erred in denying motion to set aside default judgment because judgment was void on its face due to lack of allegations of or prayer for damages against defendant, despite defendant's failure in trial court to assert judgment was void].) Further, "[t]here is no time limit to attack a judgment void on its face." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1021 [trial court had jurisdiction to consider plaintiff's motion to vacate order declaring him a vexatious litigant although he filed the motion nearly five years after entry of the order and after plaintiff voluntarily dismissed the action, where plaintiff argued trial court lacked jurisdiction to enter order and jurisdictional facts were ascertainable from the record]; accord, *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327 ["A judgment that is void on the face of the record is subject to either direct or collateral attack at any

time."].)  Therefore, although Roger failed to argue in his motion to vacate that the default judgment was void on its face, the argument is properly before us on appeal from the denial of his motion to vacate the default judgment.

> 2.  *The default judgment is void for awarding monetary relief in excess of the prayer in the first amended complaint*

A judgment or order "is considered void on its face only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence." (*Pittman v. Beck Park Apartments Ltd., supra*, 20 Cal.App.5th at p. 1021; accord, *OC Interior Services, LLC*, *supra*, 7 Cal.App.5th at p. 1328.)  Where, as here, "the complaint is not answered by any defendant," the judgment roll includes "the summons, with the affidavit or proof of service; the complaint; the request for entry of default . . . , and a copy of the judgment . . . ."  (§ 670, subd. (a).)

Inspection of the judgment roll shows the default judgment is void.  Chichyan's first amended complaint sought economic damages totaling $34,626.29.  The default judgment awarded Chichyan $304,309.84 in damages, an amount nearly 10 times that demanded in the first amended complaint.  The default judgment is therefore void to the extent the damages award exceeds the request in the first amended complaint.  We reverse with directions to the trial court to modify the judgment to reflect an economic damages award of $34,626.29 plus prejudgment interest.

14

## DISPOSITION

The order denying Roger's motion to set aside the default judgment is reversed. On remand, the trial court is directed to vacate its order denying the motion and to enter a new order granting Roger's motion in part. The trial court should modify the default judgment to reflect an economic damages award of $34,626.29, plus prejudgment interest. In all other respects, we affirm. The parties shall bear their own costs on appeal.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

15